UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourt.gov

IN RE:

FUZION TECHNOLOGIES GROUP, INC.                    CASE NO.: 01-28967-BKC- JKO

      Debtor.

_____/                  Chapter 7
                                                    Substantively Consolidated

IN RE:

FUSION WIRELESS COMMUNICATIONS,                     CASE NO.: 01-28968-BKC-JKO
 INC.

      Debtor.

_____/

SETH R. HELLER, as the Receiver for                 ADV. NO.: _____
Douglas Center RB-GEM, LLC,

      Plaintiff,

vs.

JOEL TABAS, as Successor Trustee of
Fuzion Technologies Group and Fuzion
Wireless Communications, Inc.

      Defendants/Debtors.

_____/

## COMPLAINT FOR CONVERSION AND UNJUST ENRICHMENT

     Seth R. Heller, not individually but solely in his capacity as receiver (the "Receiver" or

"Heller") for Douglas Centre RB-GEM, LLC and all of its property, by and through undersigned

counsel and pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure files this

Complaint for Conversion and Unjust Enrichment (the "Complaint") against Joel Tabas, the duly

appointed acting successor Chapter 7 Trustee (the "Trustee") for the substantively consolidated

bankruptcy estates of Fuzion Technologies Group, Inc. and Fuzion Wireless Communications, Inc. (collectively the "Fuzion Bankruptcy Estate") and alleges:

## I.  NATURE OF CASE

1.      This is an adversary proceeding filed pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure seeking money damages arising from the wrongful conversion of funds from Douglas Centre by the Fuzion Bankruptcy Estate.

## II.  JURISDICTION AND VENUE

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334.

3.      This is a core proceeding to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## III. PROCEDURAL BACKGROUND

5.      On December 7, 2001, the Debtors filed voluntary petitions for relief under Chapter 11 of the Code in bankruptcy cases styled *In re Fuzion Technologies Group Inc.* Case No. 01-28967-BKC-RBR and *In re Fuzion Wireless Communications, Inc.* Case No. 01-28968-BKC-RBR (the "Main Case").

6.      On March 26, 2002, upon motion by the Office of the United States Trustee, the Debtors' Chapter 11 cases were converted to cases under Chapter 7 of the Code.

7.      On March 27, 2002, Marika Tolz ("Tolz") was appointed as the Chapter 7 Trustee of the Debtors' bankruptcy estates.

8.      On April 1, 2003, this Court substantively consolidated the Debtors' bankruptcy estates.

9.     On July 6, 2010, Donald F. Walton was appointed as the successor trustee of the Debtors' Bankruptcy Estates.

10.     On August 25, 2010, Joel Tabas was appointed as the successor trustee of the Debtors' Bankruptcy Estates.

## GENERAL ALLEGATIONS

11.     On December 16, 2008, Marika Tolz ("Tolz") was appointed as the receiver of Douglas Centre RB-GEM, LLC ("Douglas Centre") in a civil case styled *Douglas Centre RB-GEM, LLC v. Ocean Bank*, Case No. 08-37393 CA 11, in the Eleventh Judicial Circuit in and for Miami-Dade, FL (the "Receivership Case").

12.     Pursuant to the December 16, 2008 Order Appointing Receiver (the "Receivership Order") the Court ordered that Tolz "faithfully discharge all of the duties outlined in [the Order Appointing Receiver], and shall obey all other orders of the court.  [Tolz] shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Property, and shall exercise her office accordingly".  (Receivership Order at ¶ 23). A true and correct copy of the Receivership Order is attached hereto as **Exhibit "A"**.

13.     On June 10, 2010, after notice and a hearing, Seth R. Heller was substituted in as Receiver of Douglas Centre in place of Tolz pursuant to the Order on Counterplaintiff's Motion to Substitute Receiver (the "Substitution Order").  A true and correct copy of the Substitution Order is attached hereto as **Exhibit "B"**.  Mr. Heller is the duly appointed successor Receiver over the real and personal property of Douglas Centre.

14.     Pursuant to the Substitution Order, Heller was required to prepare and file an audit of the books and records of Douglas Centre for the period that Tolz was acting as receiver for Douglas Centre. (See Substitution Order at ¶ 5).

15.    On June 29, 2010, the court in the Receivership Case, granted the Receiver's Motion to Employ Forensic Examiner *Nunc Pro Tunc* to June 10, 2010, which order permitted the Receiver to employ Pontis Advisors, LLC ("Pontis Advisors") as forensic examiners for the receivership estate and to assist the Receiver in his preparation of the audit required by the Substitution Order.

16.    On or about July 12, 2010, Pontis Advisors notified the Receiver that they discovered certain irregularities upon their review of Douglas Centre's books and records.

17.    Among those irregularities was check number 121 made payable to "TAX ACCT" and dated June 14, 2009 (the "Check"), written by Marika Tolz in the amount of $456,000 (the "Douglas Centre Diverted Funds") out of the Douglas Centre receivership estate, Bank of America account number xxxxxx5877 (the "Receivership Account").    A true and correct copy of the Check from the Receivership Account is attached hereto as **Exhibit "C"**.

18.    As reflected on the back side of the Check, the Receiver discovered that the Check from the Receivership Account was endorsed "Tax Acct for Dep." and deposited into Bank of America account number xxxxxx1112 (the "Fuzion Account"), a bank account established for the Debtors' Bankruptcy Estate in the instant chapter 7 bankruptcy case.

19.    Bank of America account number xxxxxx1112 could be verified as an account for Fuzion by the bank statements accompanying the complaint filed in the adversary proceeding styled *Conahan v. Tabas* Adv. No. 10-03610-JKO currently pending before this Court.  True and correct copies of the bank statements that accompanied the Conahan complaint are attached hereto as **Exhibit "D"**.

20.    Upon investigation and review of the books and records of Douglas Centre, the Receiver has discovered that Douglas Centre is not in any way indebted or liable to the Debtors

or their Bankruptcy Estate.  Furthermore, upon investigation and review of the books and records of Douglas Centre, the Debtors and the Debtors' Bankruptcy Estate have not provided anything of value to Douglas Centre.

21.     The Douglas Centre Diverted Funds were wrongfully deposited into the Fuzion Account by Tolz.

22.     All conditions precedent to filing this lawsuit have been satisfied or waived.

## COUNT I
## CONVERSION

23.     The Receiver realleges and reavers the allegations contained in paragraphs 1 through 22 of the Complaint as fully set forth herein.

24.     The Douglas Centre Diverted Funds, which are property of Douglas Centre, were wrongfully and intentionally transferred from the Receivership Account into the Fuzion Account, a bank account controlled by the Fuzion Bankruptcy Estate.

25.     The Fuzion Bankruptcy Estate knew that there was no legitimate basis for the transfer of the Douglas Centre Diverted Funds into the Fuzion Account.

26.     The Douglas Centre Diverted Funds were wrongfully deposited into the Fuzion Account and Douglas Centre has been permanently deprived of these funds for an indefinite period of time.

27.     The deprivation of the Douglas Centre Diverted Funds is inconsistent with Douglas Centre's ownership interest in these funds.

28.     Douglas Centre has been damaged as a direct result of the wrongful conduct of the Fuzion Bankruptcy Estate.

29.     As a result of the wrongful conduct described above, the Receiver on behalf of Douglas Centre has been forced to bring this action against the Fuzion Bankruptcy Estate and to incur unnecessary associated expenses to protect the interests of Douglas Centre.

30.     The Receiver acting on behalf of Douglas Centre is entitled to recover the attorney's fees and costs it has incurred, and continues to incur, in connection with this action as a form of special damages pursuant to the Wrongful Act Doctrine.

**WHEREFORE**, the Receiver respectfully requests that the Court enter judgment in its favor and against Joel Tabas, as the Trustee for Fuzion Technologies, Inc. and Fuzion Wireless Communications, Inc., awarding the Receiver damages in the amount of the Douglas Centre Diverted Funds plus reasonable fees and costs, and awarding such other and further relief that the Court deems just and proper.

## COUNT II
## UNJUST ENRICHMENT

31.     The Receiver realleges and reavers the allegations contained in paragraphs 1 through 22 of the Complaint.

32.     The Douglas Centre Diverted Funds, were wrongfully and intentionally transferred from the Receivership Account into the Fuzion Account, a bank account controlled by the Fuzion Bankruptcy Estate.

33.     Tolz controlled both the Receivership Account and the Fuzion Account at the time the Douglas Centre Diverted Funds were transferred.  The Fuzion Bankruptcy Estate knew that the Douglas Centre Diverted Funds were improperly deposited into the Fuzion Account.

34.     There was no legitimate basis for the transfer of the Douglas Centre Diverted Funds into the Fuzion Account.

35.     The Fuzion Bankruptcy Estate voluntarily accepted and retained the Douglas Centre Diverted Funds.

36.     The circumstances are such that it would be inequitable for the Fuzion Bankruptcy Estate to retain the benefit of the Douglas Centre Diverted Funds without paying Douglas Centre for the value of those funds.

37.     As a result of the wrongful conduct described above, Douglas Centre has been forced to bring this action against the Fuzion Bankruptcy Estate and incur unnecessary associated expenses to protect the interests of Douglas Centre.

38.     The Receiver acting on behalf of Douglas Centre is entitled to recover the attorney's fees and costs it has incurred in connection with this action as a form of special damages under the Wrongful Act Doctrine.

**WHEREFORE**, the Receiver respectfully requests that the Court enter judgment in its favor and against Joel Tabas, as the Trustee for Fuzion Technologies, Inc. and Fuzion Wireless Communications, Inc., awarding the Receiver damages in the amount of the Douglas Centre Diverted Funds plus reasonable fees and costs, and awarding such other and further relief that the Court deems just and proper.

<u>**RESERVATION OF RIGHTS**</u>

The Receiver reserves his rights to amend this Complaint, upon the completion of his investigation and discovery, to assert such additional claims for relief against the Trustee and the Debtors' bankruptcy estate and other possible parties as may be warranted under the circumstances.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully Submitted,

BAST AMRON LLP
*Counsel for the Receiver*
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami, Florida  33131
Telephone:  (305) 379-7904
Facsimile:   (305) 379-7905
Email: bamron@bastamron.com
Email: medelboim@bastamron.com


By:___/s/ *Brett M. Amron*_____
       Brett M. Amron, Esq.
       Florida Bar No. 148342
       Morgan B. Edelboim, Esq.
       Florida Bar No. 040955

# Exhibit "A"

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 08-37393 CA 11

DOUGLAS CENTRE RB-GEM, LLC,
A Florida limited liability company,

      Plaintiff,

v.

OCEAN BANK,

      Defendant.

_____/

## ORDER APPOINTING RECEIVER

Pursuant to Rule 1.620 of the Florida Rules of Civil Procedure, Defendant/Counterplaintiff Ocean Bank ("Ocean") moved for appointment of a receiver. Upon consideration of the motion, the verified pleadings, and the evidence presented at the December 11, 2008 hearing, Ocean's motion is granted.

## FINDINGS OF FACT

1.      Ocean owns and holds a promissory note that Plaintiff/Counterdefendant Douglas Centre RB-GEM, LLC ("Douglas") executed and delivered to it and a mortgage and security agreement encumbering real property located in Miami-Dade County, Florida (which is specifically described in the notice of lis pendens filed with the verified complaint) and personal property (collectively, the "Property") that secures repayment of the indebtedness.

2.      Douglas owns the Property.

{M0032481.1}

3.     On or about November 22, 2005, Douglas executed and delivered to Ocean's predecessor in interest KeyBank a promissory note in the original principal amount of Thirty Five Million Seven Hundred Seventy Two Dollars ($35,772,000.00) (the "Note"). To secure repayment of the Note, KeyBank caused a mortgage and security agreement (the "Mortgage") that Douglas executed to be recorded on November 30, 2005 in Official Records Book 24001, Page 476 of the Public Records of Miami-Dade County, Florida. On or about October 16, 2006, Douglas executed and delivered to Ocean a renewal promissory note in the principal amount of Forty Nine Million Nine Hundred Seventy-Two Dollars ($49,972,000.00) (the "Renewal Note"). To secure repayment of the Renewal Note, Ocean caused a mortgage and security agreement that Douglas executed to be recorded on October 20, 2006, in Official Records Book 25026, at Page 2073, of the Public Records of Miami-Dade County, Florida (the "Renewal Mortgage"). The Renewal Mortgage, coupled with UCC-1 financing statements, encumbers and creates a lien on the Property.

4.     The parties also agreed that all of the Property's rents, deposits, revenues and profits are assigned to Ocean. To further secure repayment of the Renewal Note, Ocean caused an assignment of leases, rents and profits that Douglas executed to be recorded on October 20, 2006, in Official Records Book 25026, at Page 2073, of the Public Records of Miami-Dade County, Florida (the "Assignment"). The Assignment provides that upon default under the Renwal Note, Ocean is entitled to the leases, rents and profits from the Property.

5.     Pursuant to the Renewal Mortgage, the parties agreed to the appointment of a receiver under the current circumstances. Douglas specifically waived any right to object to the appointment of a receiver and specifically waived any right to notice of such appointment.

2

{M0032481.1}

## CONCLUSIONS OF LAW

This cause having come before the court upon Ocean's emergency motion for appointment of a receiver, and the court having reviewed the verified pleadings and the emergency motion, and being otherwise fully advised in the premises, the court holds that good cause exists to grant the relief sought by Ocean in order to effect the provisions of the Renewal Mortgage, and in order to prevent waste. Therefore,

## IT IS ORDERED AND ADJUDGED:

1. **Appointment of Receiver.** Marika Tolz, of State Wide Realty Corp., whose address is 1804 Sherman Street, Hollywood, FL 33020 (the "Receiver"), is appointed as Receiver of Douglas and all of its property (collectively, the "Receivership Property"), including but not limited to: the Property, all books and records and all other personal property, tangible or intangible, that is used or usable or related to operations of the Receivership Property.

2. **Possession and Control of Receivership Property.** The Receiver is authorized immediately to take possession and control of the Receivership Property, and manage, recommend and consummate the sale of all or any portion of same (subject to the approval of the court), as deemed appropriate, and to exercise the powers and duties set forth in this order, including, but not limited to, authority to operate, sell or lease all or any portion of the Receivership Property, to hire and fire personnel and to execute documents relating to pending or future sales and leases. Douglas is directed to refrain from exercising control in any manner over any of the Receivership Property except as the Receiver may specifically direct.

3. **Turnover of Receivership Property.** Douglas and all of its employees and agents, are directed to turn over all of the following relating to the Receivership Property to Receiver, to the extent that they are in their possession, custody and control:

3

{M0032481.1}

a.  All keys and access codes necessary for the Receiver to obtain possession and manage the Receivership Property as provided in this order.

b.  All documents and records useful in the construction of the Property, including but not limited to building permits, plumbing and HVAC drawings, environmental reports, construction or materials contracts, architectural or design diagrams and building specifications.

c.  All work in process, materials, supplies, "punch lists" and pending work orders with respect to construction at the Receivership Property.

d.  All construction contracts and subcontracts for construction to the Receivership Property.

e.  All bids for contractor work.

f.  All draw requests.

g.  All agreements with brokers or other commission agreements pertaining to sales or leases of the Receivership Property.

h.  All documents, books, records, computer files and records of Douglas concerning the finances, operation and management of the Receivership Property.

i.  A list of all payables and receivables, and all details regarding same.

j.  All documents identifying pending litigation with which Douglas or the Receivership Property may be involved.

k.  All utility agreements.

4

l.     Such other records pertaining to the operation, construction and sale of the Receivership Property as may be reasonably requested by the Receiver, including, but not limited to, management and services contracts.

m.     All executory contracts, including, but not limited to, purchase agreements, leases, consignment agreements, service contracts, listing agreements and management contracts.

n.     Insurance policies on the Property.

o.     Accountings of all association accounts and collections, if applicable.

p.     Year-end closeout reports for building maintenance.

q.     All developer contributions made, including, but not limited to, contributions for maintenance and operating costs.

r.     Accounting for all units sold and closed at the Property.

s.     Accounting for all pending sales related to the Property, including, but not limited to, names and addresses of all parties involved with such sales, including, but not limited to, handling of closings and title companies.

t.     Master and individual unit title policies.

u.     Records for all bank accounts in which funds relating to the Receivership Property, from any source, including, but not limited to, from property owners, tenants, the management company or others, are deposited.

v.     Records for all accounts where funds relating to the Receivership Property are held in escrow.

w.     Copies of all operating licenses.

5

x.   Copies of all reports filed with the State of Florida.

y.   Copies of all pending pleadings and papers filed in any litigation relating
     to the Receivership Property, and of documents related to any threatened
     litigation, whether offensive or defensive, including, but not limited to,
     lien foreclosures and evictions.

z.   Copies of any notices of violation relating to the Receivership Property.

aa.  All surveys, construction plans, sales literature, condominium
     documents, floor plans, open permits, engineering reports and
     architectural reports.

bb.  Documentation relating to any work performed relating to the
     Receivership Property for which services remain unpaid or that gave rise
     to asserted liens.

cc.  Records and files pertaining to closings of the sale or lease of any
     Receivership Property.

dd.  Tenant files, including, but not limited to, applications for occupancy,
     leases, references and payment records.

ee.  Building and structural inspection reports.

ff.  Offers to purchase all or any portion of the Receivership Property that
     have not resulted in a closing.

gg.  All cash on hand, including but not limited to the approximately $160,000
     to which a representative of Douglas referred during the December 11,
     2008 hearing.

6

4. **Surety Bond.** The Receiver is directed to obtain a surety bond in the amount of $50,000.00 be provided by a surety authorized to do business in the State of Florida securing performance by the Receiver of the duties and obligations of her office of Receivership. The bond shall provide coverage to Ocean, defendants and the Receivership estate for loss due to acts of all agents, servants, and employees of the Receiver. The bond shall be submitted for approval within 20 days of the date of this Order. The cost of the bond shall be an expense of the Receivership, for which the Receiver shall be reimbursed in accordance with the terms of this order.

5. **Collection of Income.** The Receiver is authorized to collect and take possession and control of all rents, income and profits from the Real Property. Douglas is directed to refrain from exercising any control over any such rents, income and profits and turn over to the Receiver any and all such rents, income and profits that Douglas may receive or may have received, whether past, present or future.

6. **Checks.** The Receiver is authorized to endorse any and all checks that she may receive payable to defendants and deposit same into accounts under the Receiver's control.

7. **Use of Funds.** The Receiver is authorized to utilize the collected funds to fulfill any and all obligations of defendants, including obligations to Ocean under the Note and Mortgage.

8. **Condition of Property.** The Receiver is authorized to investigate the condition of the property, the tax status, and the status of insurance, to determine whether it is being maintained in accordance with defendants' obligations.

9. **Actions in Furtherance of Possession and Control.** The Receiver is authorized to take any reasonable actions which she shall deem necessary or appropriate to take possession

7

of, exercise full control over, to prevent waste and to otherwise preserve, manage, maintain, secure and safeguard the Receivership Property. The Receiver may also retain the services of parties or professionals as may become necessary to effectuate the duties of the Receiver.

10.     **Inventory.** The Receiver shall prepare and file with the court, pursuant to Rule 1.620 of the Florida Rules of Civil Procedure, a complete inventory, under oath, of all of the assets of which she takes custody and control under this order.

11.     **Reporting.** The Receiver is directed to prepare and file within 45 days of the date of this order and on the 20th day of each month thereafter so long as the receivership is in force, a report as required by Rule 1.620 of the Florida Rules of Civil Procedure, under oath, setting forth and reporting all changes in assets in her charge or claims against the assets that have occurred during the period covered by the report. The Receiver shall file such reports with the Clerk of the Court and shall serve a copy of each report upon counsel for Ocean and upon defendants or their attorneys of record.

12.     **Interference with Receiver.** All parties to this action, along with their respective officers, agents, servants, employees, representatives, attorneys and all those in active consort or participation with any of them are prohibited from interfering in any way with the duties and activities of the Receiver.

13.     **Cooperation with Receiver.** All parties are directed to honor the requests of the Receiver in the discharge of her duties.

14.     **Compensation of Receiver and Agents.** The Receiver and all persons whose services are utilized by the Receiver shall be compensated, subject to the approval of the court, at their normal hourly rates, with invoices to be issued on a monthly basis. The Receiver shall be

8

{M0032481.1}

reimbursed for any reasonable out of pocket expenses incurred during the period of the Receivership concerning the obligations and duties set forth in this order.

15. **Access to Books and Records.** The Receiver shall permit Ocean, its agents and counsel access to the Receivership Property at all reasonable times, to inspect the Receivership property and the books and records of Douglas.

16. **Exercise of Powers Available Under Applicable Law.** Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available under the laws of the State of Florida, which may be incidental to the powers described in this order, and to act on behalf of and in the name of Douglas, as applicable, as the Receiver shall deem appropriate.

17. **Further Instruction.** The Receiver shall have the right to apply to the court for further instructions and authorization during the pendency of this action.

18. **Protective Advances.** Subject to the order of the court, all reasonable advances to the Receiver made by Ocean for the benefit of the Receivership Property, together with any other reasonable costs and expenses incurred by the Receiver pursuant to this order shall be deemed to be protective advances under the Renewal Note, as applicable, and pursuant to the Mortgage, shall be secured by Ocean's lien, and shall have priority over all claims and liens of all others claiming an interest in the Property.

19. **No Transfer of Title.** Nothing contained in this order shall be construed to transfer title to the Receivership Property or Property to the Receiver.

20. **Lien Priorities.** The rights and priorities of Ocean, other mortgage lien claimants, any construction lien claimants, and any other parties with respect to the Receivership Property shall be determined in accordance with Florida law, without regard to the provisions of

9

this order. The Receiver is directed to pay the delinquent ad valorem taxes first before making any payments to Ocean or any other creditor.

21.    **No Waiver of Claims and Defenses.**  Nothing contained in this order shall enlarge or restrict Ocean's claims or defenses with respect to the Receivership Property.

22.    **Confidentiality.**  The parties to this action, their counsel, any experts retained by the parties, and all those in active concert or participation with them who receive actual notice of this order, or otherwise, shall keep all non-public information relating to the Receivership Property confidential, and all such persons are prohibited from disclosing any such information to anyone other than the parties to this action and their counsel without the specific order of the court.  Notwithstanding the foregoing, the Receiver, Ocean and their attorneys and agents may provide potential purchasers, consultants, or any other appropriate persons with information useful for the marketing, sale or management of the Receivership Property.

23.    **Receiver as Fiduciary.**  The Receiver shall faithfully discharge all of the duties outlined in this order, and shall obey all other orders of the court.  The Receiver shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Property, and shall exercise her office accordingly.

24.    **Acceptance of Appointment as Receiver.**  The Receiver's duty to act in that capacity is subject to the written acceptance and approval of the terms of this order.  Upon acceptance, the Receiver shall be bound by the terms of this order, and all obligations imposed under it.

25.    **Duration of Receivership.**  This Receivership shall continue until the earlier of: (i) the sale of all Receivership Property; or, (ii) the further order of the court.

{M0032481.1}

26.    **Final Accounting.**    Within thirty (30) days after the termination of the Receivership for any reason, the Receiver shall submit a final accounting for approval by the court, with copies to be furnished to the parties to this action.

27.    **Court Approval of Final Accounting.**    Upon the court's approval of the Receiver's final accounting, the Receiver shall be discharged, and her bond canceled.

28.    **Initial Duties of Receiver.**    Upon the Receiver's acceptance of this appointment, she is directed to evaluate the capabilities of and procedures implemented by the present management for Douglas. Upon completion of that evaluation, the Receiver is directed to file a report detailing her findings and make a recommendation as to whether it is necessary to maintain the receivership.

DEC 1 6 2008

ORDERED in chambers at Miami-Dade County, Florida on _____

_____, 2008.

_____

Circuit Court Judge

ROBERT N. SCOLA, JR.

Copies furnished to:
  Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, L.L.P.
  Buchanan Ingersoll & Rooney

\* signed after reviewing transcript of hearing and both proposed orders RS

11

{M0032481.1}

CASE NO. 08-37393 CA 11

## ACCEPTANCE OF RECEIVERSHIP

I accept the duties of the Receiver as set forth in the foregoing order.

Marika Tolz, Receiver
1804 Sherman Street
Hollywood, FL 33020
Telephone:   (954) 923-6536
Fax:          (954) 920-3305

STATE OF FLORIDA        )
                        )
COUNTY OF _____)

The foregoing instrument was acknowledged before me this _____ day of _____
_____, 2008, by Marika Tolz, who is personally known to me.

Signature of Notary Public

My Commission Expires:

12

Exhibit "B"

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-
DADE COUNTY, FLORIDA.

GENERAL JURISDICTION DIVISION

CASE NO. 08-37393 CA 11

DOUGLAS CENTRE RB-GEM,
LLC, a Florida limited liability
company,

       Plaintiff,

vs.

OCEAN BANK,

       Defendant.

_____/

## ORDER ON COUNTERPLAINTIFF'S MOTION TO SUBSTITUTE RECEIVER

THIS CAUSE, having come on to be heard on June 10, 2010 on Ocean Bank's Motion to

Substitute Receiver (the "Motion"), and this Court, having reviewed the Motion, heard argument

of counsel and being otherwise advised in the premises, hereby

ORDERS AND ADJUDGES as follows:

1.    Ocean Bank's Motion is granted. Effective upon entry of this Order, Seth Heller

("Receiver") is hereby substituted in place of Marika Tolz as receiver over the real and personal

property of Plaintiff/Counter-Defendant, Douglas Centre RB-GEM, LLC ("Douglas Centre"),

and is given the same powers of receiver as set forth in this Court's December 18, 2008 Order

Appointing Receiver. Mr. Heller is directed to obtain and file a surety bond in the amount of

$10,000 provided by a surety authorized to do business in the State of Florida securing

performance by the Receiver of the duties and obligations of his office of Receivership. The

bond shall provide coverage to Ocean, counter-defendants and the Receivership estate for loss

due to acts of all agents, servants, and employees of the Receiver. The bond shall be submitted for approval within 20 days of the date of this Order.

2.      The bond provided by Ms. Tolz for this receivership shall remain in place until further order of this Court.

3.      Ms. Tolz is directed to turnover to Receiver all monies held in her role as receiver for Douglas Centre immediately upon entry of this Order.

4.      Ms. Tolz is directed to turnover to Receiver all books, records, and other accountings maintained in the course of her receivership related to Douglas Centre immediately upon entry of this Order, but Ms. Tolz may retain copies of same.

5.      Receiver is directed to conduct an audit of the items received from Ms. Tolz and shall file a report within 20 days after receipt of the same.

6.      Upon entry of this Order, Ms. Tolz shall have no further obligation as the receiver in this cause and shall take no further action as the receiver for Douglas Centre, except to comply with this Order.

7.      For all litigation commenced by Ms. Tolz in her capacity as receiver, Receiver is authorized to assume responsibility for the prosecution thereof and to retain counsel as necessary to prosecute those actions.

8.      Within fifteen (15) days from the date Receiver submits the report referenced in Paragraph 5 above, this Court will consider *upon motion and notice to all parties* all pending fee applications filed *by* Ms. Tolz, relating to her work as receiver and the work by all professionals engaged by her as Receiver and in furtherance of compliance with this Order,.

CASE NO. 08-37393 CA 11

DONE AND ORDERED this **10** day of June, 2010 in Chambers, Miami-Dade County,

Florida.

CONFORMED COPY

JUN 1 0 2010

Barbara Areces

BARBARA ARECES Circuit Court Judge
CIRCUIT COURT JUDGE

Copies furnished to:
Stephanie Reed Traband
Richard A. Morgan
Richard A. Schurr
Chapman Smith

Exhibit "C"

Amount:        $456,000.00
Account:       5877
Bank Number:   11100001

Sequence Number:   7250338155
Capture Date:      06/15/2009
Check Number:      121

payment on acct

MARIKA TOLZ RECEIVER

**BANK OF AMERICA, N.A.**
CUSTOMER CONNECTION
9909-1179-121

CHECK NUMBER
**121**

DATE
06/14/09

AMOUNT
****456,000.00

2294999

PAY TO THE ORDER OF

tax account

CASE NUMBER                      ESTATE OF
08-37399CA27   ABC   Debtor: Douglas Centre RB-GEM, LLC

Four Hundred Fifty Six Thousand Dollars And 00/100

RECEIVER/TRUSTEE/DEBTOR IN POSSESSION/ASSIGNEE
THIS CHECK VOID AFTER 90 DAYS

⑈000121⑈ ⑆111000012⑈ 5877⑈          ⑊0045600000⑊

# Exhibit "D"

H

```
CUSTOMER CONNECTION                        Account Number     1112
BANK OF AMERICA, N.A.                      01 01 148 06 M0000 E#      0
DALLAS, TEXAS  75283-2406                  Last Statement: 02/27/2009
                                           This Statement: 03/31/2009
```

```
                                           Customer Service
        ESTATE OF                          1-877-757-8233
        FUZION TECHNOLOGIES
        MARIKA TOLZ - TRUSTEE              Page     1 of    2
        01-28967
        C/O GLOBAL GOVERNMENT BANKING      Bankruptcy Case Number:   0128967RBR
        ***** TX1-492-08-16 *****
```

# SPECIAL MARKETS CHECKING ACCOUNT

### Account Summary Information

```
Statement Period 02/28/2009 - 03/31/2009   Statement Beginning Balance          .00
Number of Deposits/Credits          2      Amount of Deposits/Credits     491,213.82
Number of Checks                    0      Amount of Checks                     .00
Number of Other Debits              0      Amount of Other Debits               .00
                                           Statement Ending Balance       491,213.82
Number of Enclosures                0
                                           Service Charge                       .00
```

### Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 03/26 | | 186,184.31 | 0456-> 1112 | 09925000145 |
| 03/27 | | 305,029.51 | FL BANKING CENTER DEPOSIT | 949407250305614 |

### Daily Balances

| Date | Ledger Balance | Collected Balance | Date | Ledger Balance | Collected Balance |
|---|---|---|---|---|---|
| 02/27 | .00 | .00 | 03/30 | 491,213.82 | 491,212.20 |
| 03/26 | 186,184.31 | 186,184.31 | 03/31 | 491,213.82 | 491,213.82 |
| 03/27 | 491,213.82 | 186,184.31 | | | |

H

CUSTOMER CONNECTION
BANK OF AMERICA, N.A.
DALLAS, TEXAS  75283-2406

Account Number       1112
01 01 148 06 M0000 E#       0
Last Statement: 02/27/2009
This Statement: 03/31/2009

ESTATE OF
FUZION TECHNOLOGIES

Customer Service
1-877-757-8233

Page   2 of   2

Bankruptcy Case Number:   0128967RBR

## IMPORTANT INFORMATION

**CHANGE OF ADDRESS.** Please call us at the customer service telephone number listed on the front of this statement to tell us about a change of address.

**TERMS AND CONDITIONS.** All deposits to, withdrawals from, or other transactions pertaining to your account(s) are subject to the terms and conditions of the agreement you received when you opened your account and any amendments thereto. Amendments to the agreement may be made from time to time in the manner stated therein.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS.** If you think your statement or receipt is wrong or if you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address or number listed on the front of this statement as soon you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
* Tell us your name and account number
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information
* Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account), to do this, we will re-credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we will make the appropriate adjustment to your account at the conclusion of our investigation.

**DIRECT DEPOSITS.**
If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

**REPORTING OTHER PROBLEMS.**
You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree not to make a claim against us for the problems or unauthorized transactions.

H

CUSTOMER CONNECTION                          **Account Number** ████1112
BANK OF AMERICA, N.A.                        01 01 148 06 M0000 E#      0
DALLAS, TEXAS  75283-2406                    Last Statement: 04/30/2010
                                             This Statement: 05/28/2010

━━━  ━━━

                                             Customer Service
ESTATE OF                                    1-877-757-8233
FUZION TECHNOLOGIES
MARIKA TOLZ - TRUSTEE                         Page     1 of    2
01-28967
C/O GLOBAL GOVERNMENT BANKING    Bankruptcy Case Number:    0128967RBR
***** TX1-492-08-16 *****

# SPECIAL MARKETS CHECKING ACCOUNT

### Account Summary Information

| | | |
|---|---|---|
| Statement Period 05/01/2010 - 05/28/2010 | Statement Beginning Balance | 55,924.83 |
| Number of Deposits/Credits              2 | Amount of Deposits/Credits | 422,560.83 |
| Number of Checks                        0 | Amount of Checks | .00 |
| Number of Other Debits                  0 | Amount of Other Debits | .00 |
| | Statement Ending Balance | 478,485.66 |
| Number of Enclosures                    0 | | |
| | Service Charge | .00 |

### Deposits and Credits

| Date Posted | Customer Reference | Amount | Description | Bank Reference |
|---|---|---|---|---|
| 05/14 | 6 | 416,587.25 | FL BANKING CENTER DEPOSIT | 949407250460341 |
| 05/17 | 5 | 5,973.58 | FL BANKING CENTER DEPOSIT | 949407250939508 |

### Daily Balances

| Date | Ledger Balance | Collected Balance | Date | Ledger Balance | Collected Balance |
|---|---|---|---|---|---|
| 04/30 | 55,924.83 | 55,924.83 | 05/18 | 478,485.66 | 478,127.25 |
| 05/14 | 472,512.08 | 55,924.83 | 05/19 | 478,485.66 | 478,485.66 |
| 05/17 | 478,485.66 | 472,116.85 | 05/28 | 478,485.66 | 478,485.66 |

H

CUSTOMER CONNECTION
BANK OF AMERICA, N.A.
DALLAS, TEXAS  75283-2406

Account Number   █████1112
01 01 148 06 M0000 E#        0
Last Statement: 04/30/2010
This Statement: 05/28/2010

ESTATE OF
FUZION TECHNOLOGIES

Customer Service
1-877-757-8233

Page     2 of     2

Bankruptcy Case Number:     0128967RBR

## IMPORTANT INFORMATION

**CHANGE OF ADDRESS.** Please call us at the customer service telephone number listed on the front of this statement to tell us about a change of address.

**TERMS AND CONDITIONS.** All deposits to, withdrawals from, or other transactions pertaining to your account(s) are subject to the terms and conditions of the agreement you received when you opened your account and any amendments thereto. Amendments to the agreement may be made from time to time in the manner stated therein.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS.** If you think your statement or receipt is wrong or if you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address or number listed on the front of this statement as soon you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
* Tell us your name and account number
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information
* Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account), to do this, we will re-credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we will make the appropriate adjustment to your account at the conclusion of our investigation.

**DIRECT DEPOSITS.**
If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us at the telephone number listed on the front of this statement to find out if the deposit was made as scheduled.

**REPORTING OTHER PROBLEMS.**
You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or unauthorized transactions within the time periods specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you for, and you agree not to make a claim against us for the problems or unauthorized transactions.